UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at Lexington

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 5:26-cr-00010-SCM-MAS |
| NIKITA MONTEL JENKINS, | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |

*** *** *** ***

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Matthew A. Stinnett. [Dkt. 53, Report and Recommendation]. Defendant Nikita Montel Jenkins has been charged with violating 21 U.S.C. § 841(a)(1), possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. [Dkt. 37, Superseding Indictment].

On May 5, 2026, Jenkins filed a Motion to Suppress evidence obtained during a search of a vehicle in which he was a passenger, arguing that the search was unlawful under the Fourth Amendment. [Dkt. 34, Motion to Suppress]. Judge Stinnett conducted a hearing on the Motion on June 3, 2026. [Dkt. 50, Hearing Minutes]. Specifically, Jenkins argues that all evidence obtained during the search and any fruits thereof must be suppressed because the initial traffic stop was not supported by reasonable suspicion and the duration and scope of the stop were

unlawfully expanded. [Dkt. 34 at 6–9]. On June 10, 2026, Judge Stinnett recommended that the Court deny Jenkins's Motion to Suppress, finding that (1) there was probable cause supporting the initial traffic stop, (2) the duration and scope of the stop was not unlawfully expanded, and (3) a search of the entire vehicle was justified under the Fourth Amendment. [Dkt. 53 at 5–16]. For the reasons that follow, Judge Stinnett's Recommendation will be **ADOPTED** and Jenkins's objections will be **OVERRULED**.

## I. Facts

On November 3, 2025, Lieutenant Daniel Kirstein, Nightwatch Commander at the Richmond Police Department, observed Kenneth Slaughter driving through downtown Richmond. [Dkt. 55, Suppression Hearing Tr., at 4–5]. Lieutenant Kirstein was familiar with Slaughter from his prior interactions and recognized him as the driver of the vehicle. [*Id.* at 6]. Lieutenant Kirstein followed Slaughter's vehicle for roughly two miles and observed Slaughter driving erratically. [*Id.* at 6, 8, 17]. Lieutenant Kirstein testified that he believed these actions were done in response to his presence and in an attempt to evade detection as the vehicle had previously behaved normally. [*See id.* at 6–7].

Lieutenant Kirstein "ran [Slaughter's] license" while continuing to follow Slaughter and determined that Slaughter was driving with an expired license. [*Id.* at 6]. Lieutenant Kirstein eventually initiated a traffic stop. [*Id.* at 7]. Lieutenant Kirstein testified that he initiated the stop because of erratic driving and the expired license. [*Id.* at 7–8].

The interactions that followed were captured on Lieutenant Kirstein's body worn camera, [Dkt. 49, Kirstein BWC Footage]. Lieutenant Kirstein approached the driver's side of the vehicle and began discussing Slaughter's driving with him. [Dkt. 49 at 00:00:00–00:00:22]. Lieutenant Kirstein later testified that he smelled marijuana immediately upon approaching the vehicle but did not immediately announce that to Slaughter or Jenkins, who was sitting in the passenger seat. [Dkt. 55 at 8]. He testified that making such an announcement in these circumstances would be rare and that his normal practice is to not announce such an observation until he was prepared to act on it. [*See id.* at 8–9]. This is because he would not have searched the vehicle by himself for safety reasons, and he knew backup would be arriving soon. [*Id.*]. Thus, he would not have stated his observation of a marijuana smell until backup arrived. [*See id.*].

Slaughter provided Lieutenant Kirstein with his driver's license, admitted that the license was indeed expired, and otherwise exchanged pleasantries given their prior interactions and familiarity. [Dkt. 49 at 00:00:20–00:00:29; Dkt. 53 at 2; Dkt. 55 at 8]. Lieutenant Kirstein inquired about the owner of the vehicle, and Slaughter replied that Jenkins's wife was the owner. [Dkt. 49 at 00:00:36–00:00:50]. Lieutenant Kirstein also made contact with Jenkins as the passenger. [*Id.* at 00:00:46–00:01:10; Dkt. 55 at 8]. Jenkins provided Lieutenant Kirstein with a paper copy of his driver's license but was unable to locate any insurance information. [Dkt. 49 at 00:01:10–00:01:15; Dkt. 55 at 8]. Lieutenant Kirstein was not already familiar with Jenkins. [Dkt. 55 at 8].

Lieutenant Kirstein returned to his cruiser, ran inquiries on Slaughter and Jenkins, then returned to the stopped vehicle. [Dkt. 49 at 00:02:13–00:05:07]. While inside his cruiser, Lieutenant Kirstein remarked, "He was flying coming up 3rd Street." [*Id.* at 00:02:37]. Upon returning to the stopped vehicle, Slaughter asked, "Is this just 'cause I was driving crazy, man?" [*Id.* at 00:05:20–00:05:23]. Lieutenant Kirstein replied

> Yeah, man. Rashad, bro, listen, I know you, man. You've been doing so good, but when you be driving like that it ain't a stop and wave at Dan kind of day. So listen, we're just gonna go through and make sure everything is straight. So I'm going to ask both you guys to jump out for a second.

[*Id.* at 00:05:23–00:05:37]. Both Jenkins and Slaughter then exited the vehicle. [*Id.* at 00:05:41–00:05:48].

As Slaughter and Jenkins exited the vehicle, Lieutenant Kirstein confirmed to Slaughter that his license was expired. [*Id.*]. Once both individuals were fully out of the vehicle and standing with other officers, Lieutenant Kirstein said, "Hey, listen guys. Little bit of odor of marijuana. Not a big deal. Not too concerned about it but do you guys have any weapons?" [*Id.* at 00:05:57–00:06:04]. Upon confirming that neither had weapons, Lieutenant Kirstein approached the vehicle. [*Id.* at 00:06:14–00:06:15]. Slaughter said that he was driving the vehicle because he was under the impression that Jenkins's license was suspended. [*Id.* at 00:06:33–00:06:39]. Lieutenant Kirstein explained that it was not, had the two step away from the vehicle, and proceeded to search the vehicle. [*Id.* at 00:06:39–00:11:00].

During the search, Lieutenant Kirstein found a black backpack on the passenger's side floorboard, where Jenkins was previously seated. [*Id.* at 00:08:14;

Dkt. 55 at 10]. Inside the backpack, Lieutenant Kirstein located 1.5 pounds of crystal methamphetamine in plastic bags, a bowl with residue, a spoon, plastic bags, and an operational scale with some residue on it. [Dkt. 49 at 00:08:27–00:09:50; Dkt. 55 at 10–11; Dkt. 53 at 4]. After Lieutenant Kirstein found the items, he ordered Slaughter and Jenkins detained. [Dkt. 49 at 00:08:27]. Approximately $3,000 in $20 dollar bills were later found during a consensual search of Jenkins's person. [Dkt. 55 at 11–12; Dkt. 53 at 4]. Once Slaughter and Jenkins were handcuffed, Lieutenant Kirstein returned to the vehicle and held up two bags of crystal methamphetamine. [Dkt. 49 at 00:09:05–00:09:22]. Without any prompting, Jenkins stated, "That's mine. That's mine." [*Id.* at 00:09:14]. Once Lieutenant Kirstein completed his search, he approached Jenkins who spontaneously admitted, once again, that the contraband from the backpack was his. [*See id.* at 00:14:38–00:14:45]. Later, after being read his *Miranda* rights, [*Id.* at 00:15:13–00:15:30], Jenkins, for the third time, claimed ownership of the contents of the backpack. [*Id.* at 00:15:42–00:15:45].

On February 5, 2026, the Grand Jury returned an Indictment, which was superseded by the Grand Jury on May 7, 2026. [Dkt. 1, Indictment; Dkt. 37]. The Superseding Indictment charges Jenkins with knowingly and intentionally possessing with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), with a 21 U.S.C. § 851 enhancement. [Dkt. 37].

Jenkins filed a Motion to Suppress on May 5, 2026, arguing that the evidence obtained from the vehicle as a result of the traffic stop should be suppressed. [Dkt.

34]. The Motion was briefed and a hearing held before United States Magistrate Judge Matthew A. Stinnett. [Dkt. 44, USA's Response to Motion to Suppress; Dkt. 47, Jenkins's Reply ISO Motion to Suppress; Dkt. 50]. Judge Stinnett issued a Report and Recommendation on June 10, 2026, recommending that Jenkins's Motion be denied. [Dkt. 53]. Jenkins now objects to that Report and Recommendation. [Dkt. 57, Jenkins's Objections to R&R].

**II. Analysis**

"In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)). Reasonable suspicion of ongoing criminal activity exists if specific and articulable facts exist supporting a particularized and objective basis for suspecting criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

But even a constitutionally permissible stop may veer into the realm of the impermissible if it exceeds a constitutional duration and scope. *See United States v. Williams*, 68 F.4th 304, 307 (6th Cir. 2023). These standards are enforced through the exclusionary rule, which requires the suppression of evidence obtained from an illegal traffic stop. *Blair*, 524 F.3d at 748 (citing *Wong Sun v. United States*, 371 U.S.

471, 484 (1963)) ("any evidence seized during an illegal traffic stop must be suppressed as 'fruits of the poisonous tree'").

As the proponent of the motion to suppress, Jenkins bears the burden of establishing that his Fourth Amendment rights were violated. *United States v. Coleman*, 923 F.3d 450, 455 (6th Cir. 2019) (citing *United States v. Witherspoon*, 467 F. App'x 486, 490 (6th Cir. 2012)). Generally, a defendant's showing that a warrantless search or seizure has occurred constitutes a prima facie showing of illegality. *United States v. Jackson*, No. 1:14-CR-29, 2015 WL 4509452, at *8 (E.D. Tenn. July 24, 2015) (citing *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007)). The burden then rests on the United States to show by a preponderance of the evidence that the search and seizure was reasonable under the Fourth Amendment. *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 164 n.14 (1974)).

Jenkins raises two issues in his Motion to Suppress. First, he argues that the initial traffic stop was not supported by reasonable suspicion. [Dkt. 34 at 6]. Second, he argues that, even if there was reasonable suspicion for the traffic stop, Lieutenant Kirstein impermissibly expanded the duration and scope of the stop beyond that of its original mission. [*Id.* at 7].[1]

---

[1] The United States raises a third issue in its Response where it states that "passengers who have no expectation of privacy or possessory interest in a stopped vehicle do not have standing to challenge the validity of a subsequent search of that vehicle on Fourth Amendment privacy grounds." [Dkt. 44 at 2 (citing *United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015))]. But in that same paragraph the United States appears to concede that Jenkins has standing to challenge the search based on his own detention which, if successful, could lead to the suppression of the challenged evidence. [*Id.*]. The United States again invokes a potential lack of standing later in its Response. [*Id.* at 4]. The Court agrees with Judge Stinnett that

In his Recommended Disposition, Judge Stinnett found that the traffic stop was justified because Lieutenant Kirstein had probable cause to believe a traffic violation was occurring where Jenkins knew Slaughter's license was expired and witnessed Slaughter driving erratically. [Dkt. 53 at 10–11]. Judge Stinnett further found that the scope of the stop was not impermissibly expanded as Lieutenant Kirstein was justified in investigating a potential suspended license and/or insurance violation, as well as investigating the smell or marijuana. [*Id.* at 11–15]. Finally, the search itself was justified because Lieutenant Kirstein smelled the odor of marijuana. [*Id.* at 15–16].

## A. <u>Stop of the Vehicle</u>

Although Jenkins argues that Lieutenant Kirstein had no lawful justification for the initial stop of the vehicle, the record and applicable law demonstrate otherwise. In his Motion to Suppress, Jenkins argues that "[Lieutenant] Kirstein articulated no concrete traffic violation to justify the stop." [Dkt. 34 at 6]. But Judge Stinnett found differently, with there being two articulable bases for the stop. Importantly, if Lieutenant Kirstein had "either probable cause of a civil infraction or reasonable suspicion of criminal activity," the stop was constitutionally permissible. *Lyons*, 687 F.3d at 763.

First, Lieutenant Kirstein determined prior to the stop that Slaughter's license was expired. Lieutenant Kirstein stated as much at the suppression hearing. [Dkt.

---

this standing question need not be answered because the stop and search were constitutional. [Dkt. 53 at 9–10].

55 at 6]. When Lieutenant Kirstein approached Slaughter's door, Slaughter immediately stated that he knew his license was expired, corroborating that Lieutenant Kirstein was correct in his initial determination. [Dkt. 49 at 00:00:20–00:00:29]. Lieutenant Kirstein also testified that the expired license was one of the reasons why he stopped the vehicle. [Dkt. 55 at 7–8]. And Judge Stinnett stated that, "The Court must find that [Lieutenant] Kirstein's testimony was credible." [Dkt. 53 at 11]. This Court will not now second-guess that credibility determination, especially where the record supports it. Thus, at least one reason for the stop was Lieutenant Kirstein's determination that Slaughter was committing a violation of Ky. Rev. Stat. § 186.410, which requires a valid driver's license to drive in Kentucky. [Dkt. 55 at 7]. Because Lieutenant Kirstein determined that Slaughter was driving with an expired license in violation of that statute, he had probable cause to believe that a traffic violation occurred justifying the initial stop of the vehicle. *See Terry v. Ohio*, 392 U.S. 1, 20–22 (1968).

Second, Lieutenant Kirstein also initiated the stop because of Slaughter's erratic driving. Jenkins argues that the facts articulated by Lieutenant Kirstein do not support that Slaughter's driving provided reasonable suspicion of criminal activity. [Dkt. 57 at 6–8]. He highlights that Lieutenant Kirstein never stated that he saw Slaughter driving over the speed limit or engage in any illegal driving maneuvers. [*Id.* at 7–8]. Instead, Lieutenant Kirstein pulled Slaughter over because he merely thought they were trying to avoid his detection. [*Id.* at 8]. But other evidence exists suggesting that Slaughter was indeed speeding and driving

erratically. When Lieutenant Kirstein first approached the vehicle after the stop, he questioned Slaughter on his driving. [Dkt. 49 at 00:00:00–00:00:30]. When Lieutenant Kirstein returned to his cruiser to run the duo's information, he stated, "He was flying coming up 3rd Street." [*Id.* at 00:02:37]. And when Lieutenant Kirstein returned to the vehicle, Slaughter asked if the stop was "'cause I was driving crazy." [*Id.* at 00:05:20–00:05:23]. So, regarding Slaughter's erratic driving, Lieutenant Kirstein had probable cause to believe that Slaughter was committing a traffic infraction justifying the stop. *United States v. Bailey*, 407 F. App'x 27, 28 (6th Cir. 2011).

For these reasons, Judge Stinnett correctly concluded that the traffic stop was constitutionally justified.

**B. <u>Duration and Scope</u>**

Jenkins next argues that the search was impermissibly expanded beyond its original mission, making that expansion a violation of the Fourth Amendment. [Dkt. 34 at 7–8; Dkt. 55 at 9–12]. As both sides note, even where a traffic stop is justified, it must be "limited in [both] scope and duration." *United States v. Whitley*, 34 F.4th 522, 529 (6th Cir. 2022) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)).

Judge Stinnett found that the duration and the scope of the stop were constitutionally reasonable. First, he highlighted that the length of the stop—the time between the initiation of the stop and the beginning of the search—was only around six minutes. [Dkt. 53 at 12–13]. And during those six-or-so minutes, Lieutenant Kirstein was engaged in behavior consistent with the purpose of the

traffic stop. [*Id.*]. This included talking to Slaughter and Jenkins, running their information, and waiting for them to search for insurance information. [*Id.*]. Lieutenant Kirstein's actions in those minutes leading up to the search were entirely consistent with his "mission"—addressing the traffic violation by doing what was necessary to confirm its existence. *Rodriguez*, 575 U.S. at 354. Thus, the scope and duration of that portion of the stop was permissible.

Jenkins argues that Lieutenant Kirstein impermissibly expanded the scope of the stop by ordering him and Slaughter to exit the vehicle. [Dkt. 34 at 8]. Judge Stinnett found that ordering Slaughter and Jenkins to exit the vehicle did not unreasonably prolong or expand the scope of the stop because officers making a traffic stop may order the occupants of a vehicle to exit pending the stop's completion. [Dkt. 53 at 13 (citing *Maryland v. Wilson*, 519 U.S. 408, 415 (1997)]. Further, Judge Stinnett concluded that the smell of marijuana provided Lieutenant Kirstein with at least reasonable suspicion of ongoing criminal activity so as to permit a prolonged investigation. [*Id.* at 13–14]. The Court agrees with that conclusion.

"Once the purpose of a traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Blair*, 524 F.3d at 752 (quoting *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006)) (internal quotations omitted). But "newly discovered information 'can create reasonable suspicion to detain the [occupants] longer in order to investigate the other

crimes.'" *United States v. Stevenson*, 43 F.4th 641 (6th Cir. 2022) (quoting *United States v. Sheckles*, 996 F.3d 330, 345 (6th Cir. 2021)).

It is clear that Lieutenant Kirstein had sufficient information to complete the stop as it related to the expired license or erratic driving early in the interaction. He had already determined that Slaughter's license was expired before the stop and confirmed that during the stop. But when Lieutenant Kirstein returned to their vehicle, he did not issue a citation and send them on their way. Instead, he requested that they get out of the vehicle. And Lieutenant Kirstein did not order Slaughter and Jenkins out of the vehicle pending his investigation of the traffic violations, he only did so immediately prior to the search of the vehicle.

That being the case, Lieutenant Kirstein needed reasonable suspicion of ongoing criminal activity to expand the duration and scope of the traffic stop for further investigation. *See United States v. Howard*, 815 F. App'x 69, 76 (6th Cir. 2020) (citing *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020)). The United States argues that Lieutenant Kirstein had reasonable suspicion of ongoing criminal activity because he smelled marijuana. [Dkt. 44 at 3–4]. Jenkins argues that Lieutenant Kirstein only claimed he smelled marijuana *after* he ordered them to exit, making it a post hoc justification seeking to excuse a constitutional violation. [Dkt. 34 at 7–8]. Judge Stinnett correctly rejected that argument.

The Sixth Circuit has held that an officer's detection of the smell of marijuana provides the reasonable suspicion necessary to extend a stop like this one. *Sheckles*, 996 F.3d at 345. And Jenkins's argument suggesting that Lieutenant Kirstein's

allegedly late articulation of the smell of marijuana is mere pretext to justify the prolonged stop does not pass muster. Judge Stinnett observed that Jenkins has not produced any evidence that Lieutenant Kirstein's observation of marijuana odor was any sort of fabrication. [Dkt. 53 at 14–15]. Further, Lieutenant Kirstein had a legitimate reason for waiting to announce the smell—he was waiting for backup because he was outnumbered and he did not want to mention it until he was ready to act on it. [*Id.* at 14]. Accordingly, the Court agrees with Judge Stinnett's conclusion that Lieutenant Kirstein's explanation of why he did not articulate his detection of marijuana should not be overcome by negative inference here. [*Id.* at 15]. Lieutenant Kirstein testified that he smelled marijuana as soon as he approached the car. [Dkt. 55 at 8]. Because of this, the extension of the traffic stop he effectuated was constitutionally permissible.

**C. Search of the Vehicle**

Jenkins also argues that the search of the vehicle was not supported by probable cause. [Dkt. 34 at 8]. The United States responds that the automobile exception applies because Lieutenant Kirstein had probable cause to believe the vehicle contained contraband. [Dkt. 44 at 4]. Judge Stinnett agreed with the United States and this Court concurs. [Dkt. 53 at 15–16].

Warrantless searches of a stopped vehicle are constitutionally reasonable if they are based on probable cause. *See United States v. Ross*, 456 U.S. 798, 823–24 (1982). The Sixth Circuit "has repeatedly held that officers have probable cause to search a vehicle 'when they detect the odor of illegal marijuana coming from' it."

*Sheckles*, 996 F.3d at 345 (quoting *United States v. Brooks*, 987 F.3d 593, 599–600 (6th Cir. 2021)). As explained above, the Court agrees with Judge Stinnett's determination that Lieutenant Kirstein's testimony that he smelled marijuana when he approached the vehicle should be credited. As such, the smell of marijuana gave Lieutenant Kirstein probable cause to search the vehicle and the search was constitutional.

## III. Conclusion

The Court thus agrees with Judge Stinnett's determination that the traffic stop and subsequent search did not violate Jenkins's Fourth Amendment rights. The evidence obtained as a result of that search and any fruits thereof thus should not be suppressed.

Accordingly, it is hereby **ORDERED** as follows:

1) The Court **ADOPTS** Judge Stinnett's recommended disposition of the Defendant's Motion to Suppress, [Dkt. 34].

2) The Defendant's Objections are **OVERRULED**.

3) The Defendant's Motion to Suppress, [Dkt. 34], is **DENIED**.

Signed this 19th day of August, 2026.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky